BAGYI, A MINOR, APPELLEE, *v.* MILLER, A MINOR, APPELLANT.

[Cite as Bagyi v. Miller, 3 Ohio App. 2d 371.]

(No. 4516—Decided September 28, 1965.)

*Messrs. Green, Schiavoni, Murphy & Stevens,* for appellee.
*Messrs. Stephens, Stephens & Wilkes,* for appellant.

LYNCH, J. This is an appeal on questions of law from a verdict and judgment for $10,000 for plaintiff-appellee in the Court of Common Pleas for damages resulting from personal injuries sustained by plaintiff-appellee when the automobile in which she was a passenger was involved in an accident with an automobile driven by defendant-appellant. A motion for new trial by defendant-appellant was overruled.

The first assignment of error is that the trial court erred to the prejudice of defendant-appellant in its general charge to the jury on damages. The court charged the jury that if they found that the defendant-appellant was negligent, the plaintiff-appellee would be entitled to recover compensation for injuries proximately received therefrom which included any

expense incurred as a direct result of these injuries and any expense which would be incurred, with reasonable certainty, in the future as a result of these injuries.

The petition made a claim for expenses incurred by plaintiff-appellee. However, defendant-appellant contends that there was a lack of evidence showing that the minor plaintiff-appellee had incurred these expenses or contracted therefor; and in the absence of any such testimony, these expenses are the subject of an action by the father rather than the minor child.

An examination of the transcript and bill of exceptions reveals that defendant-appellant did not take issue with this claim of the minor plaintiff-appellee for expenses in the trial court; thus, this issue is being raised for the first time in this court.

The minor plaintiff testified that she resides at 876 East Waterloo, Suffield, Ohio, which is also the same residence of her father; that she was nineteen years old, had graduated from high school and was presently unemployed but had worked temporarily at a bank. She further testified that she had received a bill from Dr. Stechschulte for $10 for his medical services, and also bills from St. Elizabeth Hospital for $25 for X-rays and $31 for emergency treatment. There was no evidence that the minor plaintiff paid the medical bills from her own personal earnings.

The presumption is that a minor child living with his parents is not emancipated. The burden of proof as to emancipation of the child is on the one asserting it. *Seitz* v. *Witzberger*, 18 O. C. C. (N. S.) 160, 32 O. C. D. 655, affirmed 88 Ohio St. 579; 39 American Jurisprudence 732, Parent and Child, Section 86; 67 Corpus Juris Secundum 755, Parent and Child, Section 52.

We hold that the evidence in this case is insufficient to prove the emancipation of the minor plaintiff.

The general rule is that damages for medical and other expenses necessarily incurred for the treatment of the injuries of an unemancipated minor child belong to the parents. *Clark* v. *Bayer*, 32 Ohio St. 299, 30 Am. Rep. 593; *Marmorstein, Recr.,* v. *Schuck*, 29 Ohio App. 229; *Seitz* v. *Witzberger*, 18 O. C. C. (N. S.) 160, 32 O. C. D. 655; 41 Ohio Jurisprudence (2d) 368-370, Parent and Child, Section 51, 39 American Jurisprudence 725, Parent and Child, Section 80.

The issue for this assignment of error is whether the father of the minor plaintiff waived or relinquished his right to recover damages for medical expenses because of injuries to his unemancipated minor daughter by bringing this action as next friend of his minor daughter, in which a claim was made for such expenses, and by testifying on behalf of his minor daughter. A research of the Ohio cases was made and no recent case on this issue was found. There are several relatively older cases which arrive at conflicting results.

In *Furste* v. *Henderson Lithographing Co.* (1911), 13 O. C. C. (N. S.) 536, 23 O. C. D. 645, the father, as next friend of his minor son, first filed an action in the United States Court wherein judgment was rendered for defendant. The father then filed an action for loss of services of the son during minority. The trial court's dismissal of plaintiff's petition was affirmed by the appellate court, the syllabus of whose opinion reads as follows:

"Where a father as next friend has prosecuted an action for his minor son for recovery of all damages from injuries resulting to the said son on account of the alleged negligence of the defendant, including his loss of earning capacity during minority, he can not after the determination of that action prosecute another on his own behalf for loss of services of the son during minority."

The Supreme Court reversed the *Furste* v. *Henderson Lithographing Co.* case without opinion, as reported in 88 Ohio St. 537. However, the grounds stated in the journal entry of the Supreme Court for reversing the circuit court appear in 11 Ohio Law Reporter 1. Pertinent excerpt is as follows:

"* * * this court finding that, although a father may, by bringing an action as the next friend of his son, in which action damages are claimed for loss of services or other damage to which the father, in his individual capacity, would have been entitled, is estopped from afterwards maintaining a suit in his own name for damages so claimed, still no such claim is shown to have been made in the case filed by the plaintiff herein as next friend of his son in the United States Court."

In *Aulen* v. *Cantor* (1912), 13 O. N. P. (N. S.) 599, 30 O. D. (N. P.) 665, the court held that in an action by a minor through his father as next friend for damages for personal

injuries, a motion lies to strike from the petition.items of expense for board, lodging and medical care; however, the court said that if the action had proceeded and the defendant had paid the minor these items, the father, being the next friend in the action and having consented to the payment to the child, could not recover in a separate action.

On the other hand there are several Ohio cases which hold that an unemancipated child, suing by his father or mother as next friend, cannot recover damages for medical expenses. *Tuttle* v. *Furi* (1908), 22 O. C. C. (N. S.) 388, 33 O. C. D. 626; *Cincinnati Traction Co.* v. *Wooley* (1906), 4 O. N. P. (N. S.) 122, 6 O. N. P. (N. S.) 444, 17 O. D. (N. P.) 19, affirmed 77 Ohio St. 642; *Landneier* v. *Cincinnati Street Ry. Co.* (1900), 7 O. N. P. 188, 4 O. D. (N. P.) 265.

However, all the above cases were decided prior to either *Furste* v. *Henderson Lithographing Co.*, supra, or *Aulen* v. *Cantor*, supra, so that the latter two cases seem to be the most recent authority in Ohio on this issue. The decision in *Furste* v. *Henderson Lithographing Co.*, supra, is in agreement with the trend of cases in other states which is ably expressed in 67 Corpus Jurus Secundum 747-748, Parent and Child, Section 43, as follows:

"A parent may waive or be estopped to assert his right to recover for medical expenses, loss of services, etc., by reason of injury to his minor child, and permit the child to recover the full amount to which both would be entitled, as where the parent as next friend brings an action on behalf of the child for the entire injury, or permits the case to proceed on the theory of the child's right to recover for loss of services and earning capacity during minority and for medical or other expenses. In such case the parent treats the child as emancipated in so far as recovery for such damages is concerned, and may not thereafter be permitted to claim that he, and not the child, was entitled to recover therefor. There is no waiver, however, where the parent is not shown to be connected in any way with the child's action, or to have had notice thereof, beyond the fact that the child lived with him; nor does the parent waive his right of action by suing as next friend for the child's pain and suffering and permanent impairment of earning capacity after majority, or by participating in the child's action or claim,

where the child is not claiming damages to which the parent is entitled.''

See 39 American Jurisprudence 728, Parent and Child, Section 83; 32 A. L. R. (2d) 1083; 37 A. L. R. 64-65.

There are Ohio cases to support the latter part of the above citation, which limits this rule of law to situations when the parent as next friend brings an action on behalf of his minor child for damages that normally belong to him, such as medical expenses. If the parent has not included these damages in the action that he filed on behalf of his minor child, the parent can file a separate action for these damages in his individual capacity, and he is not precluded from maintaining such an action by an adverse judgment against his minor child. *Krisher* v. *McAllister*, 71 Ohio App. 58; *Videtto* v. *Marsh*, 112 Ohio App. 151.

We, therefore, hold that the charge of the trial court to the jury on damages was proper.

The second assignment of error is that the trial court erred in admitting evidence over the objection of defendant-appellant in regard to future damages by a person not qualified to testify on such subject. A plastic surgeon had testified that plastic surgery would be necessary to remove the scar on plaintiff's nose as well as possibly some other scars, and that this would require hospitalization for three or four days and anesthesia. Andrew Bagyi, father of plaintiff-appellee, testified as to his hospitalization for plastic surgery to his ear, in Akron, Ohio, which is in the vicinity of plaintiff-appellee's residence. He stated that he paid $24 a day for a semi-private room in the City Hospital, $75 for the operating room and $35 for the anesthesia.

The general rule is that in personal injury actions the plaintiff may recover for the necessary and reasonable expense caused by the injury. Recovery for medical expenses is governed by what the services are reasonably worth. *DeTunno* v. *Shull*, 166 Ohio St. 365; 16 Ohio Jurisprudence (2d) 241, 242, Damages, Section 107.

The plastic surgeon had testified as to the necessity of future hospitalization; therefore, the issue on this assignment of error is whether a nonexpert witness, who has personally experienced a comparable operation, was competent to testify

as to the reasonable cost of a hospital room per day, to the cost of a hospital operating room and to the cost of anesthesia.

It is obvious that the testimony of Mr. Bagyi consisted of statements of fact based on his own personal experience rather than consisting of his opinion or estimate. The issue, then, is whether those matters were such that a person of common experience and observation would obtain sufficient knowledge of them to enable him to testify as to them.

A research was made, but no case on this specific issue was found. A comparable fact situation occurred in *Rose* v. *Brandewie, Exr.*, 60 Ohio Law Abs. 260, where the court held the trial court did not err in allowing witnesses, who were laymen and not qualified as experts, to testify as to the value of board, lodging and laundry services. The court stated:

"We are of the opinion that knowledge of values of the type of services rendered here does not depend upon professional or special skill. Persons of common experience and observation gain some knowledge of the values here in question."

We hold that a distinction must be made as to the type of hospital expenses at issue. There are some hospital expenses about which only an expert on hospital administration would be competent to testify. However, the cost of a hospital room per day and of a hospital operating room are normally uniform for everybody in a particular hospital and are fairly standard among all comparable hospitals in any given community. Hospitalization and surgery at hospitals are experiences that most families have undergone. The popular acceptance of hospitalization insurance has tended to publicize the hospital rates per day and the cost of a hospital operating room. For these reasons, we hold that the cost of a hospital room per day and a hospital operating room are common, ordinary matters within the realm of knowledge of the average layman, and that a nonexpert witness who has had the personal experience of a comparable hospitalization and surgery would have gained sufficient knowledge of the cost of a hospital room per day and of the cost of a hospital operating room to enable him to testify as to such cost.

The cost of anesthesia would vary for each type of operation but would normally be uniform for each type of operation.

It is an expense usually incident to surgery. In this case, Mr. Bagyi had undergone the same type of operation which his minor daughter had to have. We do not feel that knowledge of the cost of anesthesia for plastic surgery is restricted to expert persons in that field. We hold that a nonexpert witness who has had the personal experience of undergoing the same general type of operation at issue in a case would have gained sufficient knowledge of the cost of anesthesia to enable him to testify as to such cost.

We hold that the admission of the testimony of Mr. Bagyi on the cost of a hospital room per day, of a hospital operating room and of anesthesia was within the discretion of the trial court, and that the admission of this testimony was not an abuse of discretion. The weight of this evidence is involved but not its competency. The jury has a right to take this type of evidence for what it was worth and could properly evaluate it from its own experience. Furthermore, the opposing party has the right to show anything competent and material to disprove the testimony at issue, but in this case this was not done.

The third assignment of error is that the trial court erred to the prejudice of the defendant-appellant in failing to grant defendant-appellant's motion for new trial after it was learned that a juror failed under oath to disclose previous accidents in which he and his family were involved and in which he and his family received personal injuries and for which they made claims and received money settlements.

To support his motion for a new trial, defendant-appellant introduced testimony to the effect that juror Edmund Pilolli had been involved in accidents in 1955, 1959, and 1963 in which he had received injuries. In the 1955 accident, Mr. Pilolli claimed that he had a sprain of the lower back and that he had a bruise and sprain of the left ankle and knee.

In the 1959 accident, Mr. Pilolli claimed that he had headaches, dizziness and blurring of vision, a sprain of the neck and shoulder girdle and pain and tenderness about the lower chest and upper abdomen. His wife and two children were also injured. The claims for personal injuries were settled as follows: Mr. Pilolli, $1,200; Mrs. Pilolli, $1,200; two children, $50 each. There was also a settlement for property damage for $300.

In the 1963 accident, Mr. Pilolli sustained abrasions of the left knee and right shin and bruised hip.

During the *voir dire* examination, Mr. Schiavoni, plaintiff-appellee's attorney, asked the general question as to whether any member of the jury had ever been involved in any accident where either any juror or a member of his immediate family may have received personal injury. Mr. Pilolli in an affidavit stated that he raised his hand when this question was asked; but Mr. Stephens, the attorney for defendant-appellant, contends that Mr. Pilolli did not raise his hand. Mr. Schiavoni only asked Mr. Pilolli about his employment, his marital status and children. Mr. Stephens' examination of Mr. Pilolli consisted of the following:

"Mr. Stephens: Mr. Pilolli, you drive, sir?

"Mr. Pilolli: Yes, I do.

"Mr. Stephens: Any members of your family or you involved in any accidents? Again, as I say, we mean either automobile, pedestrian, bicycle, anything where anyone received injuries.

"Mr. Pilolli: I was going to bring it up. He said something about personal injuries. We were involved in an accident back in 1957 but there was no one hurt, just banged up. That is why I didn't say anything.

"Mr. Stephens: Fender-bender type thing?

"Mr. Pilolli: Yes, that was all taken care of.

"Mr. Schiavoni: Everybody has fender-benders."

It was stipulated that Attorney Stephens had in his possession at the time of the *voir dire* examination of the prospective jurors in this case the following confidential information furnished by the Mahoning Valley Information Bureau with respect to various jurors:

"Edmund Pilolli, 3030 Kingston Lane, Youngstown, Ohio. Received body bruises in two car accident July 16, 1963, on Route 18. Age 30. Reported by Vindicator."

The second paragraph of the syllabus of *Pearson v. Gardner Cartage Co., Inc.*, 148 Ohio St. 425, is as follows:

"Where prospective jurors on *voir dire* examination in a personal injury case remain silent on the subject of accidents or claims when inquiry is made as to whether any prospective juror or any relative or member of his family had been in-

volved in an accident or had made any claim in respect of an accident, whether a party is prejudiced by the fact that such juror sat in the trial of the case without disclosure, is a question to be determined according to the sound discretion of the trial court when the propriety of the participation by such juror is properly raised. Whether the trial court has abused such discretion is to be determined by a reviewing court in accordance with the terms of Section 11364, General Code."

Section 11364, General Code, is now Section 2309.59, Revised Code.

The law in Ohio on the issue for this assignment of error, is stated in 4 Ohio Jurisprudence (2d) 474, Appellate Review, Section 1129, as follows:

"Denial of a motion for new trial based on the ground that one of the jurors who sat in the case was disqualified will not be considered ground for reversal unless it appears that the party complaining and his counsel were ignorant of such disqualification and that they used reasonable dilgence to ascertain whether there was any legal objection to his sitting. So, the judgment will not be reversed on this ground if the party failed to examine the juror on his *voir dire* as to his qualifications and to make such inquiry as would have called upon him to disclose the facts which disqualified him * * *."

*Watts* v. *Ruth*, 30 Ohio St. 32; *Eastman* v. *Wight*, 4 Ohio St. 156; *Conrad* v. *Kerby*, 66 Ohio App. 359; *Cottman* v. *Federman Co.* 71 Ohio App. 89.

In this case, when Mr. Stephens asked whether Mr. Pilolli or any members of his family were involved in accidents, Mr. Pilolli stated "we were involved in an accident back in 1957 but there was no one hurt, just banged up." Mr. Pilolli's answer only disclosed one of three accidents in which he was involved, and his statement on personal injuries as a result of this accident was misleading, to say the least. However, Mr. Stephens had information in his possession that Mr. Pilolli had sustained minor injuries in an accident in 1963, and he made no further inquiry about any other accidents that Mr. Pilolli might have had. Therefore, we agree with the holding of the trial judge that counsel for defendant-appellant with the knowledge on hand did not use reasonable diligence and make due inquiry on the voir dire.

It is also to be noted that all twelve jurors signed the verdict in this case.

We hold that the trial court did not abuse its discretion in denying defendant-appellant's motion for a new trial.

*Judgment affirmed.*

JOHNSON, P. J., concurs.
JONES, J., concurs in *judgment*.