HOLT, APPELLANT, *v.* HARTSCHUK ET AL., APPELLEES.

(No. 1491—Decided April 3, 1953.)

*Messrs. Coughlin, Ogier & Lloyd* and *Mr. Leo J. Scanlon,* for appellant.

*Messrs. Myers & Spurlock,* for appellees.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of

Crawford County, in an action wherein the appellant, James D. Holt, was plaintiff, and the appellees, Hermine Hartschuk and others, were defendants.

The action is one for damages for personal and other injuries alleged to have been sustained by the plaintiff in a collision between the automobile operated by him and the automobile operated by the defendant Hermine Hartschuk, caused by the negligence of said Hermine Hartschuk.

The case was tried to a jury in the Common Pleas Court, which returned a verdict against the plaintiff and in favor of the defendants. Judgment was duly entered upon this verdict dismissing the plaintiff's petition at his costs. From that judgment this appeal is taken.

Plaintiff assigns error in a number of particulars which we have carefully examined and considered, but which, with the exception of one assignment of error, we find wholly without merit.

That one assignment is error in the admission of the testimony of one Dr. Heer relating to a physical examination made by him of the plaintiff, pursuant to an order of court made upon motion of the defendants, and the conclusions as to the nature and extent of plaintiff's injuries reached by him from such examination, which conclusions he testified were partially based upon a history of plaintiff's physical condition given by plaintiff to a nurse employed by Dr. Heer, and transcribed by her, X-ray photographs of plaintiff taken by one Dr. Bowen at the request but not under the supervision of Dr. Heer, and upon a report of a physical examination of the plaintiff by a Dr. Dawson. Neither the history of plaintiff's physical condition, as transcribed by the nurse, nor the X-ray photographs, nor the report of Dr. Dawson, above mentioned, are in evidence.

Dr. Heer would have been warranted in partially

basing his opinion as to the nature and extent of plaintiff's injuries, upon said written history, in the event such written history had been properly identified by the nurse who transcribed the same as the history related to her by plaintiff, and truly transcribed by her, and properly admitted in evidence in the cause and identified by Dr. Heer as the history upon which his opinion was partially based; and Dr. Heer would have been warranted in partially basing his opinion upon the X-ray photographs, in the event such photographs had been properly identified by Dr. Bowen, the doctor taking the same, as true X-ray photographs of the parts of plaintiff's body they appear to portray, taken by Dr. Bowen at the request of Dr. Heer, and properly admitted in evidence, and identified by Dr. Heer as the X-ray photographs referred to by him in his testimony; and Dr. Heer would have been warranted in partially basing his opinion upon the report of Dr. Dawson, which Dr. Dawson testified had been in writing, in the event said report was properly identified by Dr. Dawson as the report made by him, and properly admitted in evidence and identified by Dr. Heer as the report referred to by him in his testimony.

None of the conditions essential to warrant Dr. Heer to base his opinion upon said written history, X-ray photographs, and written report of Dr. Dawson were fulfilled.

The admission of the testimony of Dr. Heer, above referred to, under the circumstances mentioned, was clearly erroneous and prejudicial to the plaintiff.

The defendants, however, contend that although the admission of such testimony may have been erroneous, the issue of contributory negligence on the part of the plaintiff, raised by the pleadings and the evidence, was submitted to the jury without the intervention of error, and that under the multiple-issue rule the judgment must be affirmed notwithstanding the error men-

tioned which did not relate to the issue of contributory negligence.

In the case of *Knisely* v. *Community Traction Co.*, 125 Ohio St., 131, 180 N. E., 654, it was held:

"In a suit to recover damages for personal injuries on the ground of negligence, the allegation of defendant's negligence in the petition, and the allegation of plaintiff's contributory negligence in the answer, constitute separate and distinct issues to which the so-called two-issue rule, as defined in *Sites* v. *Haverstick*, 23 Ohio St., 626, and subsequent cases, has full application."

In the opinion it is stated:

"This court has not yet in any reported case declared that the rule is applicable where the only separate issues are those of negligence and contributory negligence. That the issue of contributory negligence is separate and distinct from the issue of defendant's negligence is undeniable. Defendant's negligence must be pleaded and proven by the plaintiff. Contributory negligence is an affirmative issue, which, though not necessary to be pleaded by the defendant, must nevertheless be proven by the defendant as an affirmative issue. There can therefore be no question that they constitute separate and distinct issues."

It further appears from the opinion that the Supreme Court declined to consider claimed error in the admission of the issue of contributory negligence, inasmuch as no error had been found in the submission of the issue of defendant's negligence, and affirmed judgment in favor of defendant.

The rule established by the case of *Sites* v. *Haverstick*, 23 Ohio St., 626, and other cases referred to in the above-quoted holding, is that where the jury returns a general verdict in a case involving two or more issues, a finding upon any one of which in favor of the successful party would entitle him to judgment,

if the record does not disclose affirmatively by answer to interrogatories or otherwise upon which issue such verdict was based, the judgment will not be reversed if no error appears as to any one or more of them although there may be error as to other issues. 2 Ohio Jurisprudence, 1187, Section 616.

It was held in the syllabus in the case of *State, ex rel. Morgan,* v. *Rusk, Dir.,* 37 Ohio App., 109, 174 N. E., 142, that:

"4. There is no 'negligence' unless it be actionable negligence.

"5. 'Negligence' is term used on which, if it exists, action can be predicated to recover."

We approve the foregoing holding as a correct statement of the rule.

Considering the above-quoted holding in the *Knisely case, supra,* in the light of the foregoing rule, it is clear that the word, "negligence," as used therein, is used in its legal sense of "actionable negligence."

In the case of *Elliman* v. *Gombar,* 86 Ohio App., 352, 91 N. E. (2d), 801, it is held:

"To constitute actionable negligence, there must concur three essential elements; a duty of care owing to the complaining party, a breach of that duty by a negligent act or omission, and an injury proximately resulting therefrom."

See, also, *Harriman* v. *Railway Co.,* 45 Ohio St., 11, at page 20, 12 N. E., 451, 4 Am. St. Rep., 507; 38 American Jurisprudence, 643, Negligence, Section 2; 29 Ohio Jurisprudence, 384, Negligence, Section 4.

We approve this holding as a correct statement of the law.

Considered in the light of the foregoing holdings, the phrase, "issue of defendant's negligence," as used in the *Knisely case, supra,* comprehends the three essential elements of (1) a duty of care owing to the complaining party, (2) a breach of that duty by a negli-

gent act, and (3) an injury proximately resulting therefrom.

This being the case, the erroneous admission of evidence reflecting upon any of said elements constitutes an erroneous admission of evidence reflecting upon the issue of defendant's negligence within the purview of the so-called two-issue rule.

Within the purview of the so-called two-issue rule, contributory negligence as a defense to a cause of action for negligence exists only where there is actionable negligence.

A judgment in a negligence action is not subject to affirmation under the so-called two-issue rule where. the issue of contributory negligence is submitted without error intervening but the issue of actionable negligence is erroneously submitted. *Bush, Admr.,* v. *Harvey Transfer Co.,* 146 Ohio St., 657, 67 N. E. (2d), 851.

In the case at bar, the issue of actionable negligence was erroneously submitted by reason of the admission of the testimony of Dr. Heer, hereinbefore mentioned, as to the nature and extent of plaintiff's injuries and for this reason the judgment is not subject to affirmation under the so-called two-issue rule.

The defendants further contend that the answer of the jury to the special interrogatory submitted to it by the plaintiff, to the effect that the jury found from the evidence and from the instructions given to it by the court, as to the law, that the plaintiff did not have the right of way at the time the accident occurred, requires the affirmance of the judgment in favor of the defendants rendered upon the general verdict of the jury.

In support of this contention they urge that said answer is consistent with. the general verdict of the jury and that when it is considered in connection with

the facts and circumstances in evidence in the case it is obvious that the general verdict of the jury is based upon a finding that the plaintiff, at the time of the collision, was proceeding in an unlawful manner, thereby contributing to cause the injuries sustained by him, and not upon a finding that the plaintiff did not sustain any injuries.

The determinative issues in the case are, one, actionable negligence on the part of the defendant; and, two, contributory negligence on the part of the plaintiff.

The finding upon the issue as to whether the plaintiff had the right of way did not in and of itself entitle the defendants to a judgment against the plaintiff.

The record of the finding upon such interrogatory does not disclose affirmatively whether the general verdict of the jury was based upon the nonexistence of actionable negligence on the part of the defendants or was based upon the existence of negligence on the part of the defendants and of contributory negligence on the part of the plaintiff.

The fact that the answer to the interrogatory is consistent with the general verdict did not constitute it as the basis of the general verdict.

So far as the record discloses, the jury may have based its general verdict upon a finding that the plaintiff did not sustain any injuries, which the jury would have been warranted in finding if it believed the testimony of Dr. Heer, hereinbefore mentioned.

An inspection of the record, as a whole, does not disclose any facts or circumstances affirmatively appearing of record tending in any manner to support the contention of the defendants.

For the error in the admission of the testimony of Dr. Heer, hereinbefore mentioned, which was prejudicial to the plaintiff, the judgment of the Common

Pleas Court is reversed and the cause is remanded for new trial and further proceedings according to law at the costs of appellees.

*Judgment reversed.*

MIDDLETON, J., concurs.

YOUNGER, P. J., dissenting. I must dissent from the majority opinion as I do not believe the admission of the testimony of Dr. Heer was prejudicially erroneous to the appellant.

There are two reasons for this belief.

First: The entire testimony of Dr. Heer should not be excluded merely because he took into consideration the history of plaintiff written down by his secretary in his absence, the X-rays taken by Dr. Bowen or the report on plaintiff made by Dr. Dawson. The history and the report lost their hearsay status by sufficient competent evidence of the plaintiff and Dr. Dawson having been introduced at the trial previous to the time Dr. Heer testified and the X-rays were not used by Dr. Heer as the basis of forming any opinion but merely to check and verify the findings he had made at a previous physical examination of the plaintiff.

Second: The answer which the jury gave to the special interrogatory and the general verdict which the jury gave to the defendants are clearly consistent with a finding by the jury based upon sufficient competent evidence and submitted without the intervention of error, that the collision was the result of negligence on the part of the plaintiff—either sole or contributory—which would defeat plaintiff's claim regardless of any physical injuries sustained. The testimony of Dr. Heer was therefore immaterial and its introduction could not be prejudicial to the plaintiff.

The record shows that as a result of an order of court which the defendants had previously obtained,

the plaintiff accompanied by his attorney, Mr. Ogier, presented himself at Dr. Heer's office in Columbus for a physical examination sometime previous to the trial.

On direct examination at the trial, Dr. Heer testified that first a history was taken by his secretary and that after reading over the history and talking with Mr. Holt and his attorney he examined Holt by means of looking at him and hearing what he had to say, feeling of his body and making a thorough examination of his body with particular reference to the sites where he complained of pain. He further testified that he examined him with his eyes, ears and hands, that he felt his skin, muscles and back. He had him stoop, walk and bend. He watched him and took his blood pressure, listened to his heart and examined him in that way. When asked as to his findings as a result of this examination Dr. Heer, in an answer covering two pages of the record, reported in detail as to what he saw, felt and observed as to plaintiff's body and the movements of his arms, legs, neck and back. He gave the results of his examination as to plaintiff's height, weight, eyes, ears, nose, throat, teeth, thyroid glands, muscles, chest, ribs and abdomen. He reported as to plaintiff's heart beat, heart murmurs, or abnormal sounds, hernia and the results of a Wasserman examination.

At the close of his examination in chief, Dr. Heer was asked what objective findings he made at this examination of plaintiff, Holt, and his answer was, "I could find no objective trouble with him of any kind." He defined objective trouble as "objective is what one can see and feel and hear and learn from one's senses."

The plaintiff in the court below moved that the entire testimony of Dr. Heer be excluded. The court overruled this motion and the majority of this court concurs with the plaintiff that this was prejudicial error. I cannot so hold.

In the first place, it is to be noted that Dr. Heer testified: "First a history was taken by my secretary and after reading over the history and talking to Mr. Holt and Mr. Ogier, I examined Mr. Holt * * *." It is not clear from this statement by the doctor nor from the record just what transpired. This statement could mean, "after reading over the history to Mr. Holt and Mr. Ogier and after talking to Mr. Holt and Mr. Ogier." It could mean, "after I read over the history and then talked * * *." It is not clear whether the history was read out loud, or audibly or not. The so-called "history," Dr. Heer testified, contained plaintiff's "present complaints and his past history." If this history was read over and discussed with plaintiff and his attorney by Dr. Heer at the time of the examination and plaintiff made no objections or corrections to it he should not now be heard to complain. However, plaintiff testified quite fully at the trial, both on direct and cross-examination as to his past history, medical and otherwise. Dr. Heer testified on direct examination as to what the past history of plaintiff was as written down and given to him by his secretary. There is no discrepancy between what plaintiff testified his past history was and what Dr. Heer testified plaintiff's past history to be from the statement furnished him by his secretary.

On direct examination, Dr. Heer was asked if previously to his physical examination of the plaintiff he had seen a report on the plaintiff made by Dr. Dawson. Dr. Heer said that he had looked at this report. Dr. Heer, upon objection of the plaintiff, was not permitted to testify as to the opinions or findings of Dr. Dawson as shown by this report.

It is to be noted that Dr. Dawson was plaintiff's personal physician for at least eight years previous to the trial, as shown by the record. He testified for the plaintiff at this trial at great length—ninety pages in

the record. He testified as to the treatment he pre-
scribed and gave plaintiff beginning April 3, 1944, for
plaintiff's prior injury; of his examination of the
plaintiff May 27, 1946, the day after the accident on
which this action is based and of his treatment up to
the time of trial; and as to the nature and the extent
of the claimed injuries and complaints of the plaintiff.

It is to be further noted that the court below sus-
tained the plaintiff's objections to questions to Dr.
Heer as to what Dr. Dawson's opinions or findings
were as shown in this report, although, in my opinion,
the questions were proper for the purpose of testing
the credibility of Dr. Dawson who was a previous wit-
ness for the plaintiff. Anyhow, Dr. Dawson's opin-
ions and feelings were well known to the jury as a
result of his previous detailed testimony.

Dr. Heer was not asked whether or not he took the
report of Dr. Dawson into consideration when mak-
ing his examination. He was asked, it is true, on
cross-examination what part of his "assumption" was
based upon the history which the secretary gave him,
and he answered, "oh, about fifty-fifty." However,
Dr. Heer testified to no assumption. He testified only
as to the objective findings he made when he examined
plaintiff.

I am of the opinion that if the statement of plaintiff's
past history, which he himself gave to the doctor's
secretary, and which she wrote down and gave to the
doctor at the same time and as part of the physical
examination, is hearsay, it lost such character or at
least it was cured, either, first, by the plaintiff and his
attorney talking the matter over with Dr. Heer, or,
secondly, by such past history being confirmed at the
trial by the previous competent testimony of the plain-
tiff himself.

I am further of the opinion that if the fact that Dr.
Heer looked at the report of Dr. Dawson tainted his

testimony with hearsay it was cured, first, because there is no testimony that Dr. Heer took it into consideration, and, secondly, it was cured by the previous competent testimony of Dr. Dawson himself.

It is stated in 31 Corpus Juris Secundum, 930, Section 193:

"In connection with other evidence which is competent in itself, evidence which, standing alone, would be objectionable as hearsay, may sometimes be received."

In regard to the X-rays, the record shows that as part of his answer as to the objective findings made at the physical examination of the plaintiff, Dr. Heer stated that another doctor X-rayed him for his cervical-dorsal spine. The plaintiff objected, "unless he has the X-rays here." The X-rays were then immediately identified as defendant's exhibits 5, 6, 7 and 8. Dr. Heer identified these four exhibits as the X-rays of plaintiff made by Dr. Bowen at his request.

No attempt was made to introduce the X-rays in evidence. Nor were they otherwise referred to, except by a question on cross-examination when Dr. Heer was asked whether "these assumptions and opinions you gave were based upon any X-rays somebody else might have given to you not in the presence of James Holt or anyone representing him." To this question Dr. Heer answered in the affirmative.

Dr. Heer evidently had these X-rays in mind when, in answer to the question whether or not it could be reasonably determined that a particular bursa located between the processes of the sixth and seventh dorsal vertebrae contained bursitis or was afflicted with bursitis, he answered that it could be only if there was X-ray evidence of a bony change in the bursa, that is, if it showed a definite calcareous change since this could not be ascertained merely by looking with the naked eye.

It is evident, therefore, that Dr. Heer wanted to check the objective findings which he made at the physical examination of the plaintiff with an X-ray made by an X-ray specialist. These X-rays merely confirmed the objective finding which Dr. Heer had made at the examination. They were not used by Dr. Heer as a basis for forming or expressing an opinion but merely for the purpose of checking or confirming an opinion previously formed at the time of the physical examination.

In connection with all three of the contentions of the plaintiff, enumerated above, I agree that, if Dr. Heer had not made a physical examination of the plaintiff and if he had attempted to testify as to plaintiff's condition from a past history taken by his secretary, X-rays taken by Dr. Bowen, and a report on plaintiff's physical condition by Dr. Dawson, his testimony should be excluded. I cannot agree that the entire testimony of Dr. Heer, that is, as to what he could "see and feel and hear and learn" from his senses when he made the physical examination of plaintiff, should be excluded because Dr. Heer read or looked at various statements, X-rays or reports which, if standing alone, might be hearsay. Dr. Heer was asked whether he had ever talked to Dr. Dawson about plaintiff's physical condition. He testified that he had not. Suppose, however, that Dr. Heer had talked to Dr. Dawson about the plaintiff one day at lunch or at a medical meeting; suppose he had looked at X-rays of the plaintiff on file at the hospital; suppose he had looked at a chart of the plaintiff while he was in the hospital; suppose he had talked to plaintiff's wife upon one or more occasions about plaintiff's physical condition. In my opinion, he is still competent to testify as to his objective findings made at the physical examination and if he admitted that such statements, X-rays or reports were

considered by him, that would merely go to the weight of his testimony and not to its entire exclusion.

In my opinion, Dr. Heer should not be excluded and forever barred from testifying as to his findings merely because he looked at a report or talked to somebody about the case, which would be hearsay if standing alone and not connected or identified with previously admitted competent testimony.

If Dr. Heer's testimony is to be thus entirely excluded, then the plaintiff is permitted to close the mouth of a valuable witness for the defendants by the plaintiff's own actions in showing Dr. Heer a report of Dr. Dawson's examination or by submitting to having X-ray pictures of himself taken for Dr. Heer or by furnishing him hearsay evidence by dictating his personal history to the secretary. The order of court for a physical examination of plaintiff made at defendants' request is thereby nullified and plaintiff has succeeded in suppressing adverse evidence and has obtained an unconscionable advantage. Whether the plaintiff does this accidently, deliberately, or by trickery, is immaterial. The result is the same.

As a practical matter, if a defendant, having obtained a physical examination of a plaintiff by court order, is bound to produce in court every report, X-ray, file or memorandum at which the physician may have looked, together with the person or persons who made or compiled such items, and also produce in court every person with whom the physician may have discussed the plaintiff's condition, before such physician may testify as to his findings made at such examination, then an insurmountable obstacle is placed before such defendant. He becomes at the mercy of a plaintiff who would furnish such physician with such data or see that such physician is talked to by some person or persons unknown to the defendant.

As indicated earlier, there is, in my opinion, another and a more determinative reason for an affirmance here of the judgment below.

I agree that an affirmance in this case cannot be had merely by the application of the multiple-issue or the so-called two-issue rule. This rule has application only where there are two or more separate issues involved and where the mental processes of the jury have not been tested by interrogatories.

In this case, a special interrogatory was submitted by the plaintiff which asked the jury to state whether or not at the time of the collision the plaintiff had the right of way. The jury answered this question in the negative. Thus an essential ingredient in the application of the two-issue rule has been removed.

In order to appreciate the results of this factual determination by the jury, a brief statement of the material facts upon which it was made is necessary.

The defendant, on May 26, 1946, was traveling south on state route 4 a short distance south of the village of Chatfield, in the open country, on her way to church with her two children. This church is located several miles south of Chatfield and on the east side of route 4. The accident happened around 9:30 in the morning when services at the church were just starting. The defendant was looking for a place to park her automobile in the church yard or on the east side of route 4 where parking places were provided. There were approximately thirty or thirty-five cars already parked there. As she approached the church she noticed through her rear view mirror that at least two cars were following her. She discovered a vacant place where she could park so she pulled over to her right a little, which would be to the west side of the highway, and stopped her car. The cars back of her also stopped. She testified that she looked ahead or to the

south and saw no one coming and looking through her rear view mirror saw that the cars back of her had stopped, so she extended her left arm and turned directly across the highway to the vacant parking place. As she proceeded across the east half of the highway she was struck by the plaintiff's car, which was proceeding north. The defendant testified she did not see plaintiff's car until the impact occurred.

The plaintiff, accompanied by his wife and another married couple, were on their way from Columbus to Lake Erie. It was misting this spring morning and the roadway was damp. Four disinterested witnesses seated in the stopped car back of the defendant, witnessed the collision. All four of these witnesses corroborated the statement of the plaintiff and the occupants of his car that immediately before the impact the plaintiff was proceeding on his proper side of the road and traveling at a speed of from twenty to thirty miles per hour. The plaintiff and the seven witnesses testified they did not see the defendant extend her arm before making the left hand turn in front of the plaintiff.

Under these undisputed facts there can be no question that the plaintiff had the right of way unless he lost this preferential status by proceeding in an unlawful manner.

As the plaintiff approached this church with thirty or thirty-five cars parked in the church yard and on the east berm of the highway, with the defendant's car parked on the west part of the highway and two or three cars parked behind her and the weather being misty and the roadway damp, it was his duty to operate his car in a careful and reasonable manner in view of such existing circumstances then confronting him. Whether or not the plaintiff did exercise ordinary care in view of these circumstances was a jury question.

There was competent, credible and sufficient evidence for the jury to arrive at the conclusion it reached, that the plaintiff did approach the point of collision in an unlawful manner, that is, by failing to exercise that degree of care which all the existing circumstances, including such traffic congestion, then required.

By answering this interrogatory as the jury did, following the instructions of the court, it, of necessity, found that the plaintiff approached the point of collision in an unlawful manner.

Therefore, the jury found that the collision was a result of either (1) the sole negligence of the plaintiff, or (2) the negligence of the defendant, contributed to by the plaintiff himself. In either event plaintiff could not recover, regardless of whether he was injured or not. The jury having arrived at this decision, its duty under the instructions of the court was to return a general verdict for the defendant, "no cause of action." This, the jury did. The jury was then under no duty, nor was it proper for it to consider any further testimony in the case as to the nature and extent of the plaintiff's claimed injuries nor any of the medical testimony introduced, including all the testimony of Dr. Heer.

The answer to the interrogatory submitted by plaintiff is clearly consistent with a finding that either plaintiff's negligence was the sole cause of the collision or that plaintiff was guilty of contributory negligence. Therefore, the claimed error relating solely to the issues of the nature and extent of plaintiff's claimed injuries and whether such claimed physical disabilities were due to a prior injury, would not justify a reversal of the judgment rendered on the general verdict for the defendant. *Soltz* v. *Colony Recreation Center,* 151 Ohio St., 503, 87 N. E. (2d), 167.

The jury having taken this view of the evidence,

the entire testimony of Dr. Heer, whether based on hearsay or not, was immaterial, and its admission was not prejudicial to the plaintiff.

The jury is credited neither with logic nor consistency by saying that it could have found that regardless of plaintiff's sole negligence or contributory negligence he was not injured as a proximate result of the collision, as shown by Dr. Heer's testimony. Dr. Heer testified he found nothing objectively wrong with the plaintiff's condition at the time he examined him, which was two years after the accident. The plaintiff claimed he was damaged to the extent of $75,000. He presented medical and hospital bills amounting to over eight hundred dollars. He claimed decreased earning power by reason of not being able to continue his former occupation as a welder. Although plaintiff greatly magnified his own injuries and losses, it is neither logical nor consistent to say that the jury found that he was entitled to nothing.

The jury's answer to the interrogatory does not fit into such a theory.

The Supreme Court's decision in the *Soltz case, supra,* does not require that the answer to the interrogatory and the general verdict must be consistent *only* with the theory that the plaintiff in this case was negligent. It is sufficient that they are consistent with such theory.

In my opinion, the judgment of the Common Pleas Court should be affirmed.