**CORWIN, Appellant,**

v.

**ST. ANTHONY MEDICAL CENTER et al.; Blesch, Appellee.**

[Cite as *Corwin v. St. Anthony Med. Ctr.* (1992), 80 Ohio App.3d 836.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–32.

Decided Aug. 4, 1992.

*John G. Neal,* for appellant.

*Jacobson, Maynard, Tuschman & Kalur, David C. Calderhead, Karen L. Clouse* and *Patrick F. Smith,* for appellee William R. Blesch, M.D.

*Lane, Alton & Horst* and *Theodore A. Munsell,* for St. Anthony Medical Center.

---

Bowman, Judge.

On October 1, 1988, appellant, Robert L. Corwin, went to the office of appellee, William R. Blesch, M.D., complaining of nausea, vomiting and diarrhea, along with pain in the stomach. Blesch examined Corwin, noting an absence of fever, and diagnosed Corwin as probably having acute viral gastroenteritis, with accompanying dehydration due to the diarrhea and vomiting. Due to the severity of Corwin's symptoms and his dehydration, Blesch admitted Corwin to St. Anthony Medical Center for observation and treatment.

At the hospital, Corwin underwent several tests, including a complete blood count and urinalysis. Corwin's white blood cell count, used to detect infection, was within the normal range, although the test detected some variation in the differential that categorizes the white cell count into several subgroups. From these results, Blesch was unable to diagnose whether an infection was occurring.

Corwin remained in the hospital for the next several days while liquids and pain medication were administered intravenously. On October 4, 1988, Blesch consulted with Richard Schlanger, M.D., a surgeon. Schlanger ordered a C.T. scan and X-rays of Corwin's abdomen, which indicated a collection of fluid in his lower abdomen and a dilation of the loops of the small bowel. From this, it was determined that Corwin had a small bowel obstruction and surgery was performed on October 5, 1988.

During surgery, it was discovered that Corwin had a ruptured appendix and an abscess, which had resulted in the collection of a large amount of pus in his abdominal cavity. Due to the fact that surgery was commenced for the purpose of correcting an obstructed bowel, Corwin's incision was large, extending from his chest to his pelvic region. During surgery, Schlanger removed the appendix, flushed out the abdominal cavity and inserted two tubes from which the additional infected material could drain from the area. After surgery, Corwin was not permitted solid food until October 14, 1988; however, he progressed well and was discharged October 17, 1988.

In July 1989, Corwin initiated this medical malpractice action against St. Anthony Medical Center, Blesch, Schlanger and Surgical Associates of Columbus. After summary judgment motions from St. Anthony, Schlanger and Surgical Associates of Columbus, these defendants were voluntarily dismissed and the matter proceeded to trial against Blesch on December 1, 1991.

At trial, Corwin sought to prove that Blesch's failure to timely diagnose his appendicitis resulted in the rupture of his appendix, with the attendant risk to his life, the extended hospital stay, the enlarged incision, and subsequent pain and suffering. At the close of Corwin's case, Blesch moved for a directed verdict on the basis that Corwin had failed to present sufficient evidence as to damages. The trial court agreed and directed the verdict in Blesch's favor, filing a written decision on December 16, 1991. Although Corwin improperly filed his appeal from the decision, rather than from the judgment of the trial court, the court entered judgment two days after the filing of the appeal and we granted Corwin's motion to supplement the record with the judgment entry, thus rendering the appeal timely.

Corwin now assigns one error:

"The trial court committed reversible error in granting the defendant, Dr. William Blesch, a directed verdict on the issue of damages because specific items of damages were presented by expert testimony and kept from jury deliberation as to their sufficiency."

In ruling on a motion for directed verdict, a trial court is required to construe the evidence most strongly in favor of the party against whom the motion is made. Civ.R. 50(A)(4); *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178, 423 N.E.2d 467, 469. Where there is substantial evidence to support the nonmoving party's side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334. See, also, *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19. Neither the weight of the evidence nor the credibility of

the witnesses is for the court's determination in ruling upon the motion. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145.

In a medical malpractice action, where the plaintiff fails to present competent expert testimony based on reasonable medical probability that the negligent acts of a physician were the direct and proximate cause of the injury, a trial court correctly grants a motion for directed verdict. See *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 110, 592 N.E.2d 828, 838.

In order to determine whether medical malpractice occurred, the trier of fact must be presented with a preponderance of evidence proving that:

" * * * [T]he injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things." *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus.

Thus, an essential element of a medical malpractice action is proof of injury proximately caused by the failure of the physician to use the appropriate care.

Upon Blesch's motion for directed verdict, Corwin did not deny having failed to present evidence as to special damages such as medical expenses or lost wages. Thus, he cannot argue here that the trial court erred in directing the verdict on the issue of special damages.

Instead, Corwin argues the directed verdict as to general damages was improper because his evidence demonstrated that he experienced four days of pain and suffering prior to the operation, that his scar was larger than if his appendix had not ruptured, and that he was forced to undergo a longer hospitalization and convalescence with accompanying pain and suffering and mental distress. Corwin alleges that his increased pain and suffering, and the prolonged nature of his illness, treatment and recovery were all due to the delay in diagnosis and that this evidence sufficiently established damages to allow the issue to go to the jury.

In a tort action, the measure of damages is normally that which will compensate and make whole the injured party. *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235. Where the permanency of an injury is obvious, such as the loss of an arm, leg or other member, the jury may draw its own conclusions as to the measure of damages; however, where

an injury is not obvious, there must be expert evidence as to the damage sustained, the probability of future pain and suffering or the permanency of the injury. See *Roberts v. Mut. Mfg. & Supply Co.* (1984), 16 Ohio App.3d 324, 325, 16 OBR 355, 357, 475 N.E.2d 797, 799, citing *Cusumano v. Pepsi–Cola Bottling Co.* (1967), 9 Ohio App.2d 105, 120, 38 O.O.2d 132, 142, 223 N.E.2d 477, 487; and *Day v. Gulley* (1963), 175 Ohio St. 83, 86, 23 O.O.2d 382, 384, 191 N.E.2d 732, 734. In any event, "[t]he damages that result from an alleged wrong must be shown with reasonable certainty, and cannot be based upon mere speculation or conjecture." *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 17, 19 OBR 71, 82, 482 N.E.2d 955, 967; *Swartz v. Steele* (1974), 42 Ohio App.2d 1, 5, 71 O.O.2d 46, 48, 325 N.E.2d 910, 913.

■ Thus, in order to prove damages, Corwin was required to have presented testimony demonstrating, with a reasonable certainty, that he was subjected to pain and suffering resulting from appellee's failure to properly diagnose his appendicitis.

■ Corwin urges that testimony by his expert established that, were it not for Blesch's delay in diagnosing his appendicitis, his appendix would not have ruptured and his extended pain and suffering and prolonged convalescence would not have occurred. He cites *Edwards v. Wiggins* (C.P.1953), 65 Ohio Law Abs. 292, 299, 114 N.E.2d 504, 508, for the concept that a plaintiff may recover damages for a convalescence prolonged by a physician's failure to use ordinary care. However, such damages must be more than merely speculative, but must establish unequivocally that damage was suffered and that the damage was beyond that normally experienced as a part of the illness and treatment.

According to Corwin's expert, if an appendectomy is performed prior to rupture, the patient is not as seriously ill and may recover within a few weeks, possibly even without the use of antibiotics. However, if the appendix has ruptured, infection is diffuse throughout the abdominal cavity and the situation can be life-threatening. In such a case, the surgeon's task is more difficult, the incision must be larger, the patient's recovery is longer and requires the use of intravenous antibiotics. Asked how long recovery would take in the case of surgery for a ruptured appendix, Corwin's expert replied:

"The length of time really depends on what kind of complications ensue, but it would be more than two months. Depending on the complications, it may be many months beyond that."

This constituted the only testimony presented regarding the length of convalescence to be expected where an appendix ruptures. While Corwin's expert did not address any specific complications Corwin himself may have

experienced, did not indicate that Corwin experienced pain and suffering beyond that to be expected from surgery for a ruptured appendix, and did not indicate what, if any, lingering problems Corwin has now or may have in the future from the infection and surgery, that evidence, coupled with Corwin's own testimony that after the operation he had some discharge through his navel and that he continues to have pains in his right side and night cramps, was marginally sufficient to establish damages for purposes of withstanding a motion for directed verdict at the conclusion of plaintiff's case. Thus, the trial court erred in determining that Corwin did not present competent expert testimony which would have established damages with reasonable certainty. While it would appear, based on the record, that appellant may have a substantial problem showing negligence, there was just enough evidence as to the issue of damages to allow reasonable minds to arrive at different conclusions in this matter so that the directed verdict was erroneous.

Corwin's sole assignment of error is sustained, the judgment of the trial court is reversed, and this matter is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and PEGGY BRYANT, JJ., concur.