39 F.3d 1181
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ENVIRONMENTAL ENTERPRISES, INC., Plaintiff-Appellant,
v.
SOLKATRONIC CHEMICALS, INC., Kramer Industries, Inc., and
Radiac Research Corp., Inc., Defendants-Appellees.
 Nos. 93-3297 to 93-3299.
 United States Court of Appeals, Sixth Circuit.
 Nov. 8, 1994.
 
 Before: BROWN, KENNEDY and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Environmental Enterprises, Inc. ("EEI") appeals the district court's judgment in its favor, but not to the extent it wanted. EEI argues that the district court erred in holding that it cannot recover damages for increased workers' compensation premiums, failing to submit the punitive damages issue to the jury, reducing its damages award for comparative negligence, failing to award damages for loss of business reputation, and failing to grant judgment as a matter of law against Radiac Research Corp. Inc. ("Radiac") on EEI's contract claim. Defendants Kramer Industries, Inc. ("Kramer") and Radiac ("Radiac") cross appeal, arguing that the district court erred in failing to grant judgment as a matter of law for Radiac on EEI's warranty claim, computing EEI's damages award, upholding the jury's award for legal fees and lost profits, and failing to grant judgment as a matter of law for Kramer on EEI's negligence claim. We affirm in part, reverse in part, and remand.
 
 Background
 
 2
 In late 1986, Defendant Solkatronic Chemicals, Inc. ("Solkatronic") contracted with Kramer, a hazardous waste broker, to arrange for the disposal of hazardous wastes generated in the process of manufacturing various chemicals, including arsine gas. Kramer, in turn, engaged Radiac to temporarily store the arsine waste and to locate a treatment and disposal facility. Before Solkatronic shipped the waste to Radiac, Kramer prepared waste profile sheet # 5473 for Solkatronic. The sheet described the contents of the drums only as "sulfuric acid with arsenic." On January 28, 1987, Solkatronic shipped twenty-one drums of arsine waste to Radiac with shipping manifest # 556549, which also listed the contents of the drums. Radiac subsequently contracted with EEI to dispose of the waste. Before shipping the waste to EEI, Radiac prepared waste profile sheet # 6800, which, in reliance on waste profile sheet # 5473, listed the contents of the drums as sulfuric acid and zinc arsenite sludge. The sheet also stated, in relevant part, that the information on it was "true and accurate to the best of [Radiac's] knowledge and ... based on an analysis of a representative sample of the waste in accordance with EPA Guidelines." Radiac shipped the drums to EEI with manifest # 313138, which gave a DOT description of the contents of the drums. EEI processed these drums without incident.
 
 
 3
 On September 23, 1987, Solkatronic shipped nine additional drums of arsine waste to Radiac. These drums were also documented on waste profile sheet # 5473 (the sheet prepared by Kramer for Solkatronic) and accompanied by a shipping manifest which described their contents. On October 6, 1987, Radiac shipped the nine drums to EEI. Like the twenty-one drum batch, these drums were documented on waste profile sheet # 6800. Furthermore, they were shipped with manifest # 637179, which listed the contents of this consignment [we]re fully and accurately described ... by proper shipping name and [we]re classified, packed, marked, and labeled, and [we]re in all respects in proper condition for transport." The manifest further advised persons to "wear protective clothing" when working with the contents. On October 13, 1987, EEI employees Arnold Golden and Donald True sustained serious injuries through exposure to arsine gas while processing the contents of these drums. EEI failed to provide Golden and True with OSHA-required breathing equipment. The arsine waste incident led to a comprehensive inspection of EEI's facility by OSHA and other unrelated dealings between EEI and OSHA.
 
 
 4
 During the liability portion of the bifurcated trial in this case, EEI argued that the arsine waste in the drums was capable of generating arsine gas without outside intervention and that, though not listed on waste profile sheet # 6800 or shipping manifest # 637179, the drums contained arsine gas when delivered to EEI. The jury found that Solkatronic and Kramer negligently caused the injuries to EEI's employees and that Radiac breached a warranty between it and EEI. The jury also found that the drums were delivered to EEI in an abnormally dangerous condition. During the damages portion of the trial, the jury awarded EEI $165,900 in various compensatory damages: $12,000 for legal fees incurred in OSHA dealings related to the arsine waste incident, $74,250 in lost business income, $71,750 in damages for injury to reputation and $7,900 for Radiac's breach of warranty. The district court refused to submit EEI's claim for punitive damages to the jury. The court also reduced EEI's damages award to account for EEI's comparative negligence and proposed a remittitur after concluding that EEI failed to establish damages for injury to its reputation with reasonable certainty. EEI rejected the proposed remittitur and the parties stipulated to a retrial of the damages issue without a jury. Thereafter, the district court entered judgment for EEI in the amount of $86,250.
 
 Analysis
 
 5
 1. Damages for increased workers' compensation premiums.
 
 
 6
 EEI argues that the district court erred in holding that it cannot recover damages for increased workers' compensation premiums due to injuries suffered by its employees from Radiac despite the fact that Radiac was not deemed negligent, because the jury found that Radiac breached an express warranty to EEI. An employer may recover damages for increased workers' compensation premiums from a third party where the third party negligently injures the employer's employee, the injury directly results from a breach of contract or warranty which the third party had with the employer, and the employer suffers damages as a direct result of the breach. See Cincinnati Bell Tel. Co. v. Straley, 533 N.E.2d 764, 772 (Ohio 1988) (citation omitted). Therefore, EEI asks this court to decide that, under Ohio law, an employer may recover damages from a third party where the third party non-negligently injures the employer's employees, the injury directly results from a breach of warranty, and the employer suffers resulting damages. We decline to consider this question, but affirm the district court's decision denying recovery for increased workers' compensation premiums because Radiac committed no breach of warranty. Because Radiac was not negligent and committed no breach of warranty, Cincinnati Bell provides no basis for assessing the disputed damages.
 
 
 7
 Radiac committed no breach of warranty under the Uniform Commercial Code (U.C.C.). First, no U.C.C. implied warranties arose because transfer of the arsine waste drums from Radiac to EEI primarily involved the rendition of a service rather than the furnishing of goods. Where the predominant factor and purpose of a contract is the rendition of a service, with the furnishing of goods only incidentally involved, the party agreeing to furnish and supply services and goods is not a seller of "goods" under Ohio Rev.Code Sec. 1302.01(A)(8), and the U.C.C.'s implied warranty provisions do not apply. See Allied Indus. Serv. Corp. v. Kasle Iron & Metals, Inc., 405 N.E.2d 307, 309 (Ohio Ct.App.1977). Second, Radiac did not breach an express warranty under Ohio Rev.Code Sec. 1302.26. The commentary to this section indicates that "those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract" are still viable. However, this commentary does not list any example of "case law growth" covering circumstances like those presented here. Moreover, at least one court has held that an express warranty cannot be created under Sec. 1302.26 where "there was no sale of goods as defined under the Uniform Commercial Code." Brown v. Christopher Inn Co., 344 N.E.2d 140, 143 (Ohio Ct.App.1975).
 
 
 8
 Even if an express warranty was created, Radiac did not breach it. Radiac's waste profile sheet listed the contents of the arsine waste drums and stated that the information it contained was "true and accurate to the best of [Radiac's] knowledge and [wa]s based on an analysis of a representative sample of the waste in accordance with EPA guidelines." However, Radiac did not breach any warranty created by the waste-profiled sheet because the waste description on the profile was indisputably true and accurate to the best of Radiac's knowledge. Radiac's shipping manifest listed the contents of the drums using DOT descriptions and declared "that the contents of the consignment are fully and accurately described ... by proper shipping name and are classified, packed, marked, and labeled, and are in all respects in proper condition for transport." There is no evidence that Radiac breached a warranty created by the manifest because EEI offers nothing to show that the DOT descriptions were inaccurate when Radiac shipped the drums to EEI.
 
 
 9
 2. Punitive damages.
 
 
 10
 Next, EEI argues that the district court erred in refusing to submit the punitive damages issue to the jury. In order to recover punitive damages from Kramer and Solkatronic, EEI must show that they acted with "actual malice." Preston v. Murty, 512 N.E.2d 1174, 1176 (Ohio 1987). "Actual malice" is, among other things, "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Id. Before submitting the punitive damages issue to a jury, a trial court must determine that "reasonable minds can differ as to whether the [defendant] was aware his or her act had a great probability of causing substantial harm" and that "sufficient evidence is presented revealing that the [defendant] consciously disregarded the injured party's rights or safety." Id. Essentially, EEI argues that the threshold requirements for submission were satisfied because Solkatronic knew that arsine gas is dangerous, Kramer knew that arsine waste can generate arsine gas, and both Kramer and Solkatronic failed to warn those working with the arsine waste of its lethal properties.
 
 
 11
 The district court properly refused to submit the punitive damages issue to the jury. First, even if Solkatronic knew of the dangers presented by arsine gas, nothing indicates that Solkatronic knew its actions had a great probability of causing substantial harm because nothing indicates that Solkatronic knew the arsine waste was capable of producing arsine gas or that arsine gas was present in the drums. Second, even if Kramer knew that the arsine waste could produce arsine gas, Kramer prepared a profile sheet indicating that the drums contained sulfuric acid and arsenic. Based on this information alone, EEI should have followed OSHA-required safety practices (i.e., use of self-contained breathing equipment). Nothing indicates that Kramer knew its actions had a great probability of causing substantial harm because compliance with OSHA's safety practices would have protected EEI's employees and Kramer was not aware that EEI would disregard these practices. Similarly, nothing indicates that Solkatronic or Kramer consciously disregarded EEI's rights or safety.
 
 
 12
 3. Comparative negligence.
 
 
 13
 EEI next argues that the district court erred in reducing the damages award against Solkatronic and Kramer based on EEI's comparative negligence. EEI asserts that the award should not have been reduced because it was based on strict liability. However, though the jury found that the arsine waste drums were delivered to EEI in "an abnormally dangerous condition," it determined that the injuries to EEI's employees were proximately caused by the negligence of Solkatronic and Kramer. Moreover, the jury assessed damages against Solkatronic and Kramer solely because of negligence. Therefore, the damages were properly reduced. See Molton v. City of Cleveland, 839 F.2d 240, 249 (6th Cir.1988), cert. denied, 489 U.S. 1068 (1989). EEI suggests that the district court erred by rejecting its requests concerning the contents of the jury-verdict form. However, EEI did not request an instruction for damages based on strict liability or object to the contents of the jury-verdict form as finally drafted. Thus, absent a showing of clear error, the jury's verdict cannot be reversed on this ground. See Woodbridge v. Dahlberg, 954 F.2d 1231, 1237 (6th Cir.1992).
 
 
 14
 4. Damages for reputational injury, legal fees, and lost profits.
 
 
 15
 Next, EEI argues that the district court erred in disallowing damages assessed for injury to its reputation and, therefore, in entering judgment for only $86,250. EEI originally claimed $286,250 in damages due to mislabeling of the drums, including legal fees expended in dealing with OSHA ($12,000), lost business profits ($74,250), and injury to its reputation or lost goodwill ($200,000). Moreover, EEI asserts that it established $158,000 in damages (including $71,750 for injury to its reputation), the amount awarded by the jury, with reasonable certainty.[1] A party cannot recover tort damages beyond those established with reasonable certainty. See Corwin v. St. Anthony Medical Ctr., 610 N.E.2d 1155, 1157 (Ohio Ct.App.1992). The district court did not abuse its discretion in disallowing the damages awarded for injury to reputation because these damages were not established with reasonable certainty. EEI's vice-president, Gary Davis, testified that EEI suffered damage to its reputation within the industry and that the perception that EEI's employees were injured affected the determination of whether customers would send material to EEI. However, Davis offered no admissible testimony concerning the amount of damages suffered. Accordingly, there is "no evidence of any specific amounts for lost goodwill." Kinetico Inc. v. Independent Ohio Nail Co., 482 N.E.2d 1345, 1351 (Ohio Ct.App.1984).
 
 
 16
 On the other hand, the district court erred in computing EEI's damages award. The district court determined that the evidence supported a damages award of $86,250, including $12,000 for attorneys' fees and $74,250 for lost profits but that it did not support an award for damages due to injury to reputation. Thus, the district court should have subtracted the damages to reputation ($71,750) awarded by the jury from the total damages award ($158,000) before reducing the remaining $86,250 to account for EEI's comparative negligence. Instead, the district court apparently first reduced the total damages award to account for EEI's comparative negligence and then subtracted an additional amount to arrive at a final damages award of $86,250.[2]
 
 
 17
 Radiac and Kramer argue, in their cross-appeals, that the district court erred in deciding that EEI established the $12,000 in damages awarded for legal fees arising out of OSHA's inspections with reasonable certainty.[3] Such damages must be established with reasonable certainty. See Corwin, 610 N.E.2d at 1157. However, we find no error by the district court on this point. Kramer and Radiac also argue that the district court erred in holding that EEI established $74,250 in lost business profits with reasonable certainty. Damages for lost profits must be established with reasonable certainty. See AGF, Inc. v. Great Lakes Heat Treating Co., 555 N.E.2d 634, 639 (Ohio 1990). Here, Vice-President Davis testified that EEI's production was reduced by one truckload per day, on an average, during the OSHA's fifteen-day inspection resulting from the arsine waste incident and identified EEI's per-truckload profits and losses. This testimony established EEI's lost business profits with reasonable certainty. Kramer and Radiac suggest that Davis's testimony was insufficient because it was not corroborated with business records. However, it is unreasonable to expect the production of corroborating records for wastes that were not processed by EEI.
 
 
 18
 5. Judgment as a matter of law against Radiac.
 
 
 19
 EEI next asserts that the district court erred in failing to grant judgment as a matter of law against Radiac on EEI's breach of contract claim, arguing that EEI had a contract with Radiac to supply drums of specifically-described waste and that Radiac breached this contract by shipping drums with contents that materially differed from the description. We review the district court's denial of EEI's motion for judgment as a matter of law de novo. See Montiel v. City of Los Angeles, 2 F.3d 335, 342 (9th Cir.1993). Judgment as a matter of law is appropriate against a party whose position cannot be maintained under controlling law. See Fed.R.Civ.P. 50(a)(1). However, there is a dispute concerning whether arsine gas was present in the drums when EEI received them or whether the gas was produced by EEI's actions. The district court properly denied EEI's motion for judgment as a matter of law because there is a dispute as to whether the contents of the drums differed from their description when Radiac shipped them to EEI.
 
 
 20
 6. Judgment as a matter of law for Kramer.
 
 
 21
 Finally, Kramer asserts that the district court erred in failing to grant its motion for judgment as a matter of law on EEI's negligence claim. Once again, we review the district court's denial of a motion for judgment as a matter of law de novo, see Montiel, 2 F.3d at 342, and judgment as a matter of law is appropriate on claims that cannot be maintained under controlling law, see Fed.R.Civ.P. 50(a)(1). Kramer argues that the record contained no evidence of any negligence on its part, inasmuch as its "sole function in dealing with the waste material involved was to act as a broker for Solkatronic in finding a facility for the disposition of that waste." However, James Splain, a plant manager at Solkatronic, testified that Kramer prepared the waste profile sheet (# 5473) that formed the basis for other descriptions of the contents of the arsine waste drums. A jury could find that Kramer, with its superior scientific knowledge, negligently prepared the waste profile sheet and that this negligence proximately caused the injuries to EEI's employees. Therefore, the district court did not err in refusing to grant judgment as a matter of law on this claim.
 
 Conclusion
 
 22
 We AFFIRM the district court's judgment insofar as it held that EEI cannot recover damages for increased workers' compensation premiums, refused to submit the punitive damages issue to the jury, reduced EEI's damages award for EEI's comparative negligence, refused to award damages for reputational injury, upheld the jury's award for legal fees and lost profits, denied judgment as a matter of law against Radiac on EEI's contract claim, and denied judgment as a matter of law for Kramer on EEI's negligence claim. We REVERSE the district court insofar as it denied judgment as a matter of law for Radiac on EEI's breach of warranty claim. Moreover, we also hold that the district court erred in computing EEI's damages award. Therefore, we REMAND the case for resolution consistent with this opinion.
 
 
 
 [1]
 The $158,000 amount does not include the $7,900 awarded against Radiac on account of its breach of warranty, since this award was not subject to reduction and was not affected by the district court's decision to disallow damages for injury to its reputation
 
 
 [2]
 As the eventual judgment was the result of a trial by the court, it is difficult to ascertain how it awarded $86,250, except by reflecting the jury's findings. However, on remand, the court may be able to explain in more detail how it computed the damages
 
 
 [3]
 EEI incurred a total of $18,695 in legal fees for various matters involving OSHA