**[Cite as *Aviv v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-1968.]**

# IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| EDEN AVIV | Case No. 2022-00741JD |
| Plaintiff | Magistrate Anderson M. Renick |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate under the custody and control of defendant, Ohio Department of Rehabilitation and Correction (ODRC), brings this action for negligence arising from an incident between plaintiff and another inmate, Timothy Akers, which resulted in an injury to plaintiff's eye. The issues of liability and damages were tried before the magistrate on January 17, 2024.[1]

**Factual Background**

{¶2} Plaintiff testified that on March 31, 2023, he was incarcerated in Unit 1 at Mansfield Correctional Institution (ManCI) awaiting transfer to Ross Correctional Institution (RCI). At the time of the incident, plaintiff was classified as a level 2 inmate and he shared a cell with Timothy Akers, a level 3 inmate. Plaintiff testified that Akers assaulted him with a razorblade while they were confined in the cell together, causing permanent damage to plaintiff's eye. Plaintiff claimed that Akers had a violent history, including an incident during which Akers allegedly threw hot oil on another inmate. Plaintiff contends that defendant was negligent in placing him in a cell with Akers based upon Akers' alleged violent history.

---

[1] At the outset of the proceedings, the court addressed the parties' pending motions. For the reasons stated on the record, plaintiff's January 12, 2024 motions for additional discovery, and defendant's January 9, 2024 motion for leave to file an amended answer were DENIED.

{¶3} During cross examination, plaintiff acknowledged that he had previously been classified as a level 1 security inmate, the lowest security level, while he was housed at Mansfield Correctional Camp. Plaintiff's security level was subsequently increased to security level 2 and he was transferred to ManCI as a result of a fight with another inmate.

{¶4} Alicia S. Milks, a correctional officer (CO) at ManCI, testified that she was assigned to Unit 1B at the time of the altercation between plaintiff and Akers. Milks identified an incident report that she completed. (Defendant's Exhibit A.) Milks related that she responded to plaintiff's cell when she heard the altercation and that she and another CO entered the cell to control the situation. (*Id.*) Plaintiff was subsequently transported to the institution clinic for medical treatment. (*Id.*)

{¶5} Milks further testified that a search of the cell revealed no weapon and that if she had found a weapon, she would have noted such a discovery in her incident report. (Defendant's Exhibit A.) Milks explained that an inmate can request to be moved to a different cell on "moving day" and, alternatively, an inmate can refuse to be locked in a cell with another inmate or request to be moved immediately for his safety. Milks testified that she was not aware of any problem between plaintiff and Akers prior to this incident and that plaintiff never requested to change cells.

{¶6} Justin Henry, a unit manager at ManCI, corroborated Milks' testimony about the procedures an inmate could use to seek protective custody if the inmate feared harm from another inmate. Henry testified that an inmate seeking protective custody may request that a CO or unit staff initiate the process. Henry explained that while a level 2 inmate is waiting to be transferred to another facility, defendant's policy allows the level 2 inmate to be housed in the same general population areas with level 3 inmates.

{¶7} Henry testified that he had access to inmate security level records, including records related to protective custody requests at ManCI. According to Henry, plaintiff had requested protective custody when he was housed at the Level 1 Unit Camp, a separate minimum-security facility. Henry reviewed records regarding bed moves for plaintiff at ManCI. Defendant's records show that, in March 2022, plaintiff was placed in a restrictive housing unit after he had requested protective control while an investigation was being conducted. Plaintiff was designated to be transferred to another level 1 facility in lieu of protective custody. As a result of the transfer, a security level review was conducted and

based upon plaintiff's behavior record, defendant's bureau of classifications determined that he should be classified as a level 2 security inmate. In accordance with defendant's policies, plaintiff was placed in general population in Unit 1B pending transfer to a level 2 facility.

{¶8} Henry also reviewed Akers' records which confirmed that plaintiff and Akers had not previously been housed in the same area prior to this incident. Henry testified that he was not aware of either a request by plaintiff to be moved or a problem with plaintiff and Akers during the couple of days that they were housed together.

{¶9} Michael Scott, a certified registered nurse who is an administrator at RCI, testified as to plaintiff's medical records, including the emergency assessment that was completed soon after the incident. Scott testified that plaintiff had sustained an eye injury from the March 31, 2022 incident with Akers; that the nurse who treated plaintiff filled out the required report; and that plaintiff was transported to the local hospital. (Defendant's Exhibit C.) He explained that, upon return to the institution following a visit to the hospital, an inmate would be kept in the infirmary and subject to routine assessments and safety checks. (*Id.*) Scott explained that, upon review of plaintiff's medical records, plaintiff was kept for observation in the facility's infirmary for two to three days following the hospital stay. (*Id.*) Scott further testified that plaintiff's medical record showed he was diagnosed with an orbital hematoma and that he had sustained some blindness to his damaged eye. (*Id.*)

{¶10} Plaintiff asserted that his permanent eye injury was a result of defendant's negligence, and that defendant erred in housing plaintiff with a higher security inmate. He further argued that defendant was negligent in treating his injuries and unduly delayed transferring him from ManCI's infirmary to the hospital.

**Conclusions of Law and Analysis**

{¶11} "To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom." *Taylor v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-1156, 2012-Ohio-4792, ¶ 15. "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio*

*Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8. "The state, however, is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-442, 2013-Ohio-1519, ¶ 17. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16.

{¶12} "When one inmate attacks another inmate, 'actionable negligence arises only where prison officials had adequate notice of an impending attack.'" *Skorvanek v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 17AP-222, 2018-Ohio-3870, ¶ 29, quoting *Metcalf v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 01AP-292, 2002-Ohio-5082, ¶ 11; *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 9 ("The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault"). "'Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved.'" *Skorvanek* at, ¶ 29, quoting *Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-932, 2016-Ohio-3134, ¶ 11.

{¶13} "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Lucero v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-288, 2011-Ohio-6388, ¶ 18. "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14.

{¶14} Although plaintiff alleged in his complaint that he verbally notified defendant's COs that there "were problems between the inmates" and that he wanted to be moved out of his cell, during his testimony, plaintiff failed to identify who he allegedly notified about his fear of an assault. Plaintiff did not challenge Henry's testimony that there was

no record to show that plaintiff had notified defendant's staff of any threat by another inmate. Nor did plaintiff challenge Milks' testimony that the first time she was aware of a problem between plaintiff and Akers was when she responded to the altercation at issue.

{¶15} Although plaintiff stated that he verbally requested to be moved to a different cell, he failed to establish that he requested protective custody or informed defendant's staff that he feared for his safety prior to being injured on March 31, 2022. During cross examination, plaintiff admitted he knew how to use, and had previously used, the "kite" system to report issues to defendant's staff, including how to request a change in cellmate. Plaintiff acknowledged that he did not know Akers and that he did not have any interactions with Akers before they were placed in the same cell. Plaintiff did not testify that he either requested protective custody or informed defendant's staff that he feared for his personal safety. Milks testified credibly that she was not aware of either any problem between plaintiff and Akers or any request by plaintiff to be moved prior to the incident.

{¶16} Even if the court found that plaintiff had made a verbal request to move to a different cell, vague statements that the two inmates were not getting along, or that they needed a bed move, do not rise to the level of adequate notice of an impending attack. *See Jackson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 99AP-934, 2000 Ohio App.LEXIS 1671, 9 (Apr. 18, 2000) (finding no notice of an impending attack where the inmate made only vague statements that he needed to get off the range or be moved off the range but did not request protective custody or directly express fear of an impending assault).

{¶17} Although plaintiff contends that defendant was negligent for housing him with a level 3 inmate, the court is instead persuaded by Henry's testimony that defendant's policy allowed him to be temporarily housed with a level 3 inmate. Plaintiff acknowledged, and Henry confirmed, that plaintiff had been classified as a security level 2 inmate and that he had been assigned to Unit 1B while he was waiting to be transferred to another institution. According to Henry, it is not unusual for an inmate's security classification to either increase or decrease as a result of a special review based on behavior. Henry testified that plaintiff and Akers had been assigned to the same cell for only a couple of days prior to the incident.

{¶18} The court finds that plaintiff neither sent any kite or other communication indicating that he feared for his safety while housed with Akers, nor did he inform defendant that he was likely to be attacked by Akers or anyone else. Plaintiff knew how to seek protective custody and how to notify defendant of a potentially dangerous situation, as he had done so in the past, but he did not do so before this incident. Upon review of the evidence, the court finds that plaintiff failed to prove by a preponderance of the evidence that defendant had either actual or constructive notice of an impending attack on plaintiff by Akers.

**Eye injury (medical) claim**

{¶19} Plaintiff also asserted that there was an undue delay in his transportation to the emergency room from ManCI, resulting in permanent disability to his eye. However, to the extent that plaintiff alleges that defendant failed to provide adequate medical care for his eye injuries, he cannot prevail on a claim of medical malpractice without a medical expert:

> To establish a cause of action for medical malpractice, the plaintiff "must show the existence of a standard of care within the medical community, breach of that standard of care by the defendant, and proximate cause between the medical negligence and the injury sustained." *Deer v. River Valley Health Sys.*, 4th Dist. No. 00CA20, 2001 Ohio 2662, quoting *Taylor v. McCullough-Hyde Mem. Hosp.* (1996), 116 Ohio App.3d 595, 599, 688 N.E.2d 1078. Expert testimony is required to establish the standard of care and to demonstrate the defendant's alleged failure to conform to that standard. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 130-31, 346 N.E.2d 673. Failure to establish the standard of care is fatal to a prima facie case of medical malpractice. Id. at 130.

*Reeves v. Healy*, 192 Ohio App.3d 769, 2011-Ohio-1487, 950 N.E.2d 605, ¶ 38 (10th Dist.). Likewise, competent expert testimony is required to establish that the medical negligence at issue was the direct and proximate cause of injury. *Corwin v. St. Anthony Med. Ctr.*, 80 Ohio App.3d 836, 840, 610 N.E.2d 1155 (10th Dist.1992). Medical experts must express their "opinions in terms of a reasonable degree of medical

probability." *Reinhardt v. Univ. of Cincinnati Med. Ctr.*, 10th Dist. Franklin No. 94API04-603, 1994 Ohio App. LEXIS 5554, 15 (Dec. 13, 1994).

{¶20} The evidence shows that plaintiff was promptly transported to the institution infirmary and subsequently transferred to the local hospital for examination and treatment. Plaintiff did not retain a medical expert to show that defendant's medical care was inadequate or that any delay in transferring him to the hospital was a proximate cause of his injuries. Absent expert testimony, plaintiff cannot sustain his burden regarding the standard of care, breach of that standard of care, and proximate cause.

{¶21} Based upon the foregoing, the magistrate finds that plaintiff failed to satisfy his burden of proof to establish that defendant had notice of an impending attack and that defendant breached its duty of reasonable care, or that defendant was negligent in its care for plaintiff after the incident. Therefore, the magistrate recommends that judgment be entered in favor of defendant.

{¶22} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

ANDERSON M. RENICK
Magistrate

**Filed April 10, 2024**
**Sent to S.C. Reporter 5/22/24**