[Cite as *Cephas v. Ohio Dept. of Rehab. & Corr.*, 2026-Ohio-326.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| ERNEST CEPHAS | Case No. 2024-00825JD |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant, the Ohio Department of Rehabilitation and Correction (ODRC), brought this action arising out of an attack upon him by other inmates on April 9, 2023, while he was incarcerated at the Lebanon Correctional Institution (LeCI). On December 4, 2025, defendant filed a stipulation wherein ODRC conceded that its employees breached their duty of care on April 9, 2023, and that this breach was the proximate cause of harm to plaintiff. The stipulation was approved, and the case proceeded to a trial on the issue of damages before the undersigned magistrate.

**Findings of Fact**

{¶2} On April 9, 2023, plaintiff was housed on the third-floor range of B block, cell 35 at LeCI. Plaintiff was in his cell eating and watching television when inmates began to enter his cell. One inmate began to swing a shank, or weapon, to cut plaintiff. Another inmate hit plaintiff over the head with a lock in a sock. Plaintiff fell to the ground and the inmates continued the attack by kicking and hitting him. At some point, plaintiff lost consciousness. When plaintiff regained consciousness, he attempted to escape, but he was pulled back to the cell where he was repeatedly punched and kicked and hit with a lock and a sock. At some point plaintiff overheard the inmates discussing what to do with plaintiff. Plaintiff's hands had been bound to the bed, his legs bound, and his pants had been pulled down. At some point plaintiff was raped by the inmates. Plaintiff was lying

in a pool of blood, bleeding from the head and nose, when ODRC staff ordered the inmates to exit plaintiff's cell.  The attack on plaintiff was carried out by approximately 8 inmates who entered and exited his cell over a period of approximately 90 minutes. Plaintiff was thereafter sent to Atrium Medical Center (Atrium) for treatment and thereafter to Ohio State University Medical Center (OSUMC) for continued treatment and observation.

{¶3} Plaintiff offered two videos that are body camera videos from ODRC officers who encountered plaintiff immediately after the attack.  Plaintiff's Exhibit 9.  In one video a corrections officer approaches the cell and orders the inmates out of the cell.  *Id*.  Five inmates then exit the cell.  *Id*.  The corrections officer then calls for medical, stating that there is an inmate passed out on the floor.  *Id*.  The corrections officer then instructs plaintiff to put his pants on.  *Id*.  In the second video, plaintiff is seen on the floor, apparently tied to the bunk bed without clothing.  Plaintiff's Exhibit 10.  Medical staff arrive shortly thereafter with a wheelchair for plaintiff. *Id*.

{¶4} Plaintiff also offered a number of exhibits for the court's consideration. However, there was no testimony as to the significance of the exhibits nor was there any testimony regarding any findings in the records.  Furthermore, no medical witness testified regarding the contents of the exhibits or how the findings relate to the attack.  Those exhibits were admitted for the sole purpose of showing that plaintiff sought medical care following the attack.  Plaintiff's Exhibits 1-6.  The court also submitted Exhibit 11, which is emails with attached exhibits plaintiff sent to the court for purposes of trial.  One of the emails does not have any attachment and appears to have been intended to be exhibits 7 and 8, which the court did not receive.

{¶5} William Harlan, M.D., chief medical officer at the Warren Correctional Institution (WCI) treated plaintiff after plaintiff was transferred from LeCI to WCI.  As a part of his treatment, Harlan reviewed medical records generated during plaintiff's treatment.  Harlan explained that when plaintiff was at Atrium, he underwent several studies which ruled out intercranial injuries like a hemorrhage or internal bleeding.  The medical staff at Atrium noted that there was no traumatic injury of the chest, abdomen, or pelvis. Defendant's Exhibit A, 000071-000073.  Degenerative bilateral changes in the hip, or osteoarthritis was noted, but Dr. Harlan explained that such degeneration is normal

wear and tear rather than an acute injury. *Id*. The Atrium medical staff noted a possible fracture of the nasal bone and facial swelling. *Id*. It was noted that plaintiff suffered a concussion, scalp laceration, and multiple contusions. *Id*. It was recommended that plaintiff be transferred to OSUMC for observation. *Id*.

{¶6} While at OSUMC, plaintiff underwent a number of studies. Dr. Harlan explained that there were no fractures or other significant findings other than a nasal fracture. Defendant's Exhibit A, 000088. At OSUMC, the medical staff noted that there was no need for plastic surgery intervention and that plaintiff had no new pain over his nose. Defendant's Exhibit A, 000118-000119. Plaintiff was thereafter discharged to ODRC.

{¶7} Dr. Harlan examined plaintiff on April 17, 2023, wherein he determined the laceration to plaintiff's head, which required two staples to close, had healed. Defendant's Exhibit A, 000145. Dr. Harlen noted that plaintiff did not appear to be in acute distress, but he did have bilateral infraorbital ecchymosis, or bruising under the eyes. *Id*. Dr. Harlen also noted bruising and abrasions on plaintiff's arms and legs. *Id*. Dr. Harlen noted that plaintiff's motor functions were intact and that he had normal strength and a normal gate. *Id*.

{¶8} Dr. Harlan again examined plaintiff on May 24, 2023. Defendant's Exhibit A, 000160. Dr. Harlan noted no swelling and full range of motion. *Id*. Dr. Harlan noted that plaintiff had pain moving his left arm outward. *Id*. Dr. Harlan noted no abrasions, scrapes, or bruising. *Id*. Dr. Harlan did not believe any additional treatment was warranted at that time. Defendant's Exhibit A, 000161. No other witnesses testified and there was no other evidence presented.

**Law and Analysis**

{¶9} To prevail on a claim for negligence, plaintiff must prove, by a preponderance of the evidence, that defendant owed plaintiff a duty, that defendant breached that duty, and that defendant's breach proximately caused plaintiff's damages. *Armstrong v. Best Buy Co., Inc.*, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St.3d 75, 77 (1984). Whether defendant owed plaintiff a duty and/or breached such duty is immaterial when plaintiff cannot show the proximate cause of his injuries by a

preponderance of the evidence. *See Forester v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-6296, ¶ 7 (10th Dist.) (a plaintiff has the burden to prove each element of their negligence claim by a preponderance of the evidence). As stated beforehand, defendant previously stipulated that it owed plaintiff a duty of care, breached the duty of care, and caused plaintiff damages. Therefore, the magistrate need only decide the nature and extent of the damages.

{¶10} As a general rule, the appropriate measure of damages in a tort action is the amount which will compensate and make the plaintiff whole. *N. Coast Premier Soccer, LLC v. Ohio Dept. of Transp.*, 2013-Ohio-1677, ¶ 17 (10th Dist.). "'The fundamental rule of the law of damages is that the injured party shall have compensation for all of the injuries sustained.'" *Landis v. William Fannin Builders, Inc.*, 2011-Ohio-1489, ¶ 37 (10th Dist.), quoting *Fantozzi v. Sandusky Cement Prods. Co.*, 64 Ohio St.3d 601, 612 (1992).

{¶11} "'It is axiomatic that every plaintiff bears the burden of proving the nature and extent of his damages in order to be entitled to compensation.'" *Jayashree Restaurants, LLC v. DDR PTC Outparcel LLC,* 2016-Ohio-5498, ¶ 13, (10th Dist.) quoting *Akro-Plastics v. Drake Indus.*, 115 Ohio App.3d 221, 226 (11th Dist. 1996). "[D]amages must be shown with reasonable certainty and may not be based upon mere speculation or conjecture . . . ." *Rakich v. Anthem Blue Cross & Blue Shield*, 2007-Ohio-3739, ¶ 20 (10th Dist.).

{¶12} "Although a claimant may establish proximate cause through circumstantial evidence, 'there must be evidence of circumstances which will establish with some degree of certainty that the alleged negligent acts caused the injury.'" *Mills v. Best W. Springdale*, 2009-Ohio-2901, ¶ 20 (10th Dist.), quoting *Woodworth v. New York Cent. RR. Co.*, 149 Ohio St. 543, 549 (1948). "Generally, where an issue involves a question of scientific inquiry that is not within the knowledge of a layperson, expert testimony is required." *Harris v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-5714, ¶ 16 (10th Dist.), citing *Stacey v. Carnegie-Illinois Steel Corp.*, 156 Ohio St. 205 (1951). "Where complicated medical problems are at issue, testimony from a qualified expert is necessary to establish a proximate causal relationship between the incident and the injury." *Tunks v. Chrysler Group LLC*, 2013-Ohio-5183, ¶ 18 (6th Dist.); *see Corwin v. St. Anthony Med. Ctr.*, 80 Ohio App.3d 836, 840-841 (10th Dist. 1992) ("Where the permanency of an injury is obvious, such as the loss of an arm, leg or other member, the jury may draw its own

conclusions as to the measure of damages; however, where an injury is not obvious, there must be expert evidence as to the damage sustained, the probability of future pain and suffering or the permanency of the injury."); *Schadhauser v. Ohio Dept. of Rehab. & Corr.*, 2018-Ohio-3282, ¶ 11 (10th Dist.) ("In general, an issue that involves a question of scientific inquiry that is not within the knowledge of [a] layperson is an issue that requires expert testimony to prove . . . the mechanisms for contracting specific medical conditions typically are not within the knowledge of a layperson."); *Wright v. Columbus*, 2006-Ohio-759, ¶ 19 (10th Dist.) (expert testimony is required to establish proximate cause of an alleged injury where the alleged injuries are internal and elusive, and are not sufficiently observable, understandable, and comprehensible by the trier of fact such that the question of the causal connection between the breach of duty and the alleged injury is peculiarly within the scope of expert scientific inquiry).

{¶13} Here, plaintiff claimed that he was required to undergo hip-replacement surgery because of the attack. Plaintiff, however, did not present any expert testimony to support such a conclusion. Plaintiff's medical records and Dr. Harlan established that plaintiff suffered from degenerative osteoarthritis. Furthermore, Dr. Harlan contradicted plaintiff's claim by testifying that plaintiff's degenerative osteoarthritis was considered normal wear and tear rather than an acute injury. Dr. Harlan's testimony was credible and authoritative on that point. The mechanisms and cause of such a condition are not within the common knowledge of a layperson and expert testimony establishing that plaintiff's hip surgery was necessitated by the attack was necessary. Nevertheless, plaintiff proved damages concerning pain and suffering that resolved over the course of a month in addition to emotional distress that he suffered while undergoing the 90-minute attack. No doubt, during the 90-minute attack, plaintiff felt panicked and significant pain as he was beaten, raped, and bound to the bed.

{¶14} Regarding damages for pain and suffering, the Supreme Court of Ohio has said:

Other elements such as pain and suffering are more difficult to evaluate in a monetary sense. The assessment of such damage is, however, a matter solely for the determination of the trier of fact because there is no standard by which such pain and suffering may be measured. In this regard, this

court has recognized that "no substitute for simple human evaluation has been authoritatively suggested." *Flory v. New York Central RR Co.*, (1959), 170 Ohio St. 185, 190, 10 Ohio Op. 2d 126, 128, 163 N.E.2d 902, 905. *Fantozzi v. Sandusky Cement Prods. Co.*, 64 Ohio St.3d 601, 612, (1992).

{¶15} Although a court may consider "awards given in comparable cases as a point of reference," there is "no specific yardstick, or mathematical rule exists for determining pain and suffering." *Hohn v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 1993 Ohio App. LEXIS 6023, 10-11 (10th Dist. Dec. 14, 1993). Indeed, the "finder of fact" must make a "human evaluation" of all the facts and circumstances involved. *McCombs v. Ohio Dept. of Dev. Disabilities*, 2022-Ohio-1035, ¶ 29 (10th Dist.) (cleaned up).

{¶16} In the closing arguments, plaintiff stated that he believed that this case was worth millions of dollars. In its closing arguments, defendant cited a number of cases awarding damages and/or settlement agreements for varying amounts; however, none of those cases involved an attack and rape by up to eight inmates over a 90-minute period.

{¶17} In a somewhat comparable case, an employee of ODRC threatened to rape the plaintiff, and harassed the plaintiff over the course of the next several months. *Lester v. Ohio Dept. of Rehab. & Corr*., 2022-Ohio-2729 (Ct. of Cl.). The court found that the plaintiff suffered a great deal of anxiety and awarded $150,000. *Id*. While the record in that case involved significant emotional distress, the conduct at issue in this case is ghastlier. In another somewhat comparable case, the plaintiff was raped by an unknown male. *Shivers v. University of Cincinnati*, 2005-Ohio-949, ¶ 2 (Ct. of Cl.). Following a trial on damages, the court awarded $100,000. *Shivers v. University of Cincinnati*, 2006-Ohio-625, ¶ 4 (Ct. of Cl.) (reversed on other grounds *Shivers v. Univ. of Cincinnati*, 2006-Ohio-5518, ¶ 2 (10th Dist.). The award of damages in that case, however, occurred nearly 20 years ago.

**Conclusion**

{¶18} Here, plaintiff established that he was beaten and raped for approximately 90 minutes by 8 inmates, no doubt experiencing a great deal of anxiety and suffering.

Plaintiff suffered abrasions, contusions, fracture of the nose, a concussion, and swelling. These injuries slowly healed over the course of the next month.

{¶19} Based upon the foregoing, plaintiff is entitled to compensatory damages in the amount of $175,000, plus the $25 filing fee, for a total award of $175,025. Accordingly, it is recommended that judgment be entered for plaintiff in that amount.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

GARY PETERSON
Magistrate

**Filed January 28, 2026**
**Sent to S.C. Reporter 2/3/26**